JOSHUA WEBSTER Junior *et al. versus* OTIS G. RANDALL *et al.* and Trustee.

The plaintiff may give in evidence, under a count for money had and received, a promissory note due when the action was commenced, but which, at that time, he did not intend to include in the action.

The plaintiff having made an agreement, at the time of commencing such action, that he would pay to the defendant, or to such of his creditors as he should designate, whatever sum should be recovered of one summoned in the action as a trustee, it was *held*, that the plaintiff was not, by such agreement, estopped, as against the defendant, to give such note in evidence, the benefit thus secured to the defendant not being coextensive with what might be recovered of him but with what might be recovered of the trustee.

*Held* also, that the plaintiff was not, by the agreement, estopped to recover of the trustee, notwithstanding that, since the commencement of the suit, the demands due to such creditors had been assigned to a *bonâ fide* purchaser for a valuable consideration, and the trustee had paid over the funds in his hands in satisfaction of the same, and notwithstanding the plaintiff had commenced a subsequent action, declaring on the promissory note above mentioned, in which the defendant was arrested.

ASSUMPSIT brought by Webster and Chase against O. G. Randall and Stillman Fitch, as principal defendants, and Moses Mellen, as their trustee. The writ was dated the 17th of January, 1833. It contained the common money counts, and the damages were laid at $ 10,000. There was no count upon any promissory note.

At the trial, before *Wilde* J., the plaintiffs offered in evidence a promissory note for $ 2119·26, bearing even date with the writ, signed by the defendants and payable to the plaintiffs or order, on demand.

The defendants contended, 1. That this note was not the cause of action on which the plaintiffs relied, or which they had in their minds, when the writ was sued out; and 2. That the action was brought for the benefit of the defendants themselves, and that the plaintiffs had promised to pay to the defendants wnatever sum should be recovered of Mellen the trustee, or to cancel demands against them, such as they should

2

point out; and that as the defendants did not wish the suit to be prosecuted further, the plaintiffs could not recover.

As evidence of this agreement the defendants introduced a memorandum, signed by Webster and Chase, as follows: — "Boston, January 17th, 1833. We, the undersigned, hereby promise to pay Stillman Fitch and O. G. Randall, or either of them, whatever sum shall be recovered of Moses Mellen as trustee, on suits this day commenced, or to cancel demands against them such as shall be pointed out to us by them as *bonâ fide* and legal; but it is hereby agreed and understood that we shall not be liable for any further sum than shall be received, nor until said funds shall come into our hands."

Two promissory notes, dated the 17th of January, 1833, given by the defendants to the plaintiffs, one for $10,000, the other for $2,000, were produced by the defendants, and were proved to have been made at the same time and place as the foregoing memorandum and the writ in this case, and without any valuable consideration.

J. Wade testified, that on the morning of the same 17th of January, Webster, Fitch, Edward Mellen and Moses Mellen came to the office of B. Sumner and requested a writ against the defendants, in which Moses Mellen was to be summoned as trustee; that two writs were then made, one for $10,000, the other for $2,000; that the witness saw two notes, dated the same 17th of January, which were written by Webster and signed by the defendants.

Mr. Sumner testified, that the four persons named by Mr. Wade, called at his office on the morning of the same 17th of January, to consult him upon the practicability of distributing the property of the defendants, in the hands of Moses Mellen their assignee, among their creditors, by a trustee process; and that he told them he thought it might be done.

The defendants produced a writ, bearing date several days after the one in this suit, in which the plaintiffs declare on the note now offered by them in evidence. That action and the one for $2,000, had been discontinued. The defendants contended that this evidence was conclusive to show that the plaintiffs elected to proceed upon this note, in the action last brought by them.

The defendants also produced the following order, signed by themselves and addressed to the plaintiffs, a copy of which had been left with the plaintiffs since a former trial of this action : — " We hereby point out to you as *bonâ fide* and legal demands against us, the several demands of non-preferred creditors, who have signed the assignment made by us, dated the 16th of January, 1833, and direct that the proceeds, now in Moses Mellen's hands, the assignee of said assignment, shall be applied in equal proportions to said non-preferred creditors' demands in said assignment, who have signed said assignment, to cancel the same, according to the original intention of your receipt, dated the 17th of January, 1833. The names of said creditors are as follows, and the several sums due to them respectively, as set against their respective names, to wit," &c.

The jury were instructed, that the plaintiffs were entitled to recover, notwithstanding it did not appear that the note now offered in evidence was the one intended to be put in suit, and notwithstanding all that took place at Mr. Sumner's office ; and further, that the plaintiffs were not estopped by any thing contained in their memorandum, from maintaining this action. The jury found a verdict for the plaintiffs for $ 2119·26 and interest. If the instructions were incorrect, a new trial was to be granted ; otherwise judgment was to be rendered according to the verdict.

*S. D. Parker* and *Brigham*, for the defendants.
*Fletcher, Fuller* and *Washburn*, for the plaintiffs.

SHAW C. J. delivered the opinion of the Court. The first question presented in this case is, whether under a count for money had and received the plaintiff can give in evidence a promissory note, which he had not in mind at the time when he commenced his action ; and the defendants contend that he cannot. This question, we think, depends upon the correct application of the maxim, that in declarations and all other pleadings, the *allegata* and the *probata* must correspond, and it is true that a party cannot sue upon one cause of action, and recover upon another. But what are the allegations and what is the cause of action, which the plaintiffs set forth ? They allege that the defendants are indebted to them, in the sum of $ 10,000 for money had and received, and this is the legal

cause of action. This, according to the rules of law, may be proved by various kinds of evidence, as, an accountable receipt, a promissory note, or parol evidence of a loan. The plaintiff may support his declaration by any of these species of evidence, proving the existence of such legal cause of action, at the time the suit is commenced ; and since it has been held that a promissory note is good legal evidence of money had and received to the plaintiff's use, he may of course give in evidence any such note, which he then held. And although the plaintiff had particularly in his mind one species of evidence when he commenced his suit, yet if he fails in that or otherwise, if he has other evidence which verifies his allegation and proves the existence of his cause of action, his proofs conform to his allegations and warrant him in demanding a verdict. We think it impossible to distinguish this case, in principle, from the one decided in this Court in 1835, *Hodges* v. *Holland*, 16 Pick. 395.*

But it is contended, that though this might be the result in ordinary cases, yet here the suit was commenced by an agreement and understanding between the plaintiffs and defendants, that it should be sustained only on the two fictitious notes simultaneously made, and that to give in evidence this promissory note, is in violation of the plaintiff's agreement, and of good faith. It is extremely probable that some of the original purposes of some of the parties, may be disappointed, but if it be so, it will be attributable to the hasty and careless manner in which the business was transacted, and because some of the purposes were such that they could not be carried into effect consistently with the rules and principles of law.

But it does not appear, that there was any agreement to sue or rely upon those notes only ; if it had been so, the course would had been plain, to declare upon those notes specifically and then if the notes should fail the suits would fail. But by bringing actions for money had and received, and this being done with the knowledge of the defendants, their assent is to be presumed ; and it cannot be presumed to have been done in ignorance of the law, because it was done under the advice

---

* See *Adams Bank* v. *Anthony*, 18 Pick. 238.

ot counsel. The agreement to pay over a portion of the amount recovered, related not to the proceeds of those notes, but to the proceeds of the suits, upon whatever grounds the plaintiffs might recover.

But another and perhaps the most important ground of objection is, that by an agreement entered into, at the time the suit was brought, it was in effect stipulated that it was brought for the benefit of the defendants themselves, that the amount, when recovered, is to be paid over to them or to such creditors as they shall direct, that therefore the defendants have a right to direct and control the conduct and prosecution of the suit, to waive the benefit and to require the plaintiffs to proceed no further, and that this they do, by objecting to the evidence and defending the suit.

If this ground of defence were sustained by the evidence, it would be entitled to great consideration. The law abhors circuity of action, and various expedients are resorted to in order to prevent it ; among which estoppels and rebutters are prominent. So an executory contract not to sue generally, or a contract of indemnity, will be taken to operate by way of release, to prevent circuity of action. So where an indorser of a negotiable note, after various mesne indorsements, again becomes indorsee. He can sue no indorser, subsequent to his first indorsement, though any other indorsee might, because whatever he should recover of such mesne indorser, as subsequent indorsee, he would be liable to reimburse as prior indorser, and therefore to avoid circuity of action, it shall operate as a defence to the first suit. But the agreement in the present case, does not support the ground so taken, nor bring the case within the operation of the principle relied on. To effect that object, the liability to reimburse, or to indemnify, must be coextensive with the claim, which it is offered to defeat. But in looking at this agreement, it appears to be an obligation by the plaintiffs to the defendants, given at the time of commencing this suit, promising to pay to the defendants, or such creditors as they should designate, whatever sum should be recovered of the trustee, on suits that day commenced. But the summoning of the trustee is only one of the modes of securing, in whole or in part, the sums which may be recovered in the

Webster
v.
Randall
and Tr.

suit; *non constat* that any thing will ever be recovered of the trustee, or that other modes of satisfying the judgment may not be discovered. In all other respects then, than as to the funds in the hands of the trustee, it does not appear that the suit is brought for the benefit, or is to be under the control of the defendants, and therefore the liability of the plaintiffs to repay, is not coextensive with the claim which they are seeking to enforce and recover. That special liability in a particular event therefore, cannot operate as a defence to the plaintiffs' suit.

*Judgment on the verdict.*

Mellen, the supposed trustee, admits in his answers, that at the time of the service of the writ upon him he had effects of the defendants in his hands, but he states that the plaintiffs' agreement and the defendants' notice to them before recited, have been presented to him, and that agreeably to them he has appropriated and paid over a large portion of the funds which were in his hands, and since the funds have been already appropriated as he believes the parties intended, he asks to be discharged. He also states, that since the commencement of this suit, he has been served with another trustee process, sued out by one Barker against the defendants, and the respondent as their trustee. And further, that the demands of the several creditors of the defendants, which the defendants pointed out to the plaintiffs to be paid out of any funds in the trustee's hands, have since been transferred to Joshua Mellen, a *bonâ fide* purchaser for a valuable consideration, and, as the respondent believes, upon the expectation that such purchaser should receive whatever funds should be in the hands of the respondent. He also makes a part of his answer, the affidavits of Wade and Fitch, by which it is stated that the action was commenced upon a different promissory note from the one for $2119·26, on which the verdict was rendered, and that a few days after the commencement of this suit the plaintiffs sued out a writ declaring upon this note for $2119·26, on which writ the plaintiffs caused the defendants to be arrested; and that the plaintiffs entered the same suit in court, where it remained about a year, and afterwards discontinued it.

The questions arising on the trustee's answers, were argued in writing.

**Shaw C. J.** The trustee admits, that at time of the service of the writ, he had funds of the defendants in his hands, liable to the attachment, and he is therefore to be charged, unless he can show sufficient cause why he should be discharged. We do not now inquire into the amount, nor is it material so to do. The argument proceeds on the ground that he had something, and whether less or more, is to be inquired into hereafter, should the question ever arise. The plaintiffs having recovered a judgment against the principal defendants, the only question remaining is, whether execution therefor shall be awarded against their goods and effects, in the hands of the trustee.

And the Court are of opinion, that there is nothing shown in the trustee's answers, why he should not be charged. The trustee relies mainly on the agreement entered into by the plaintiffs with the defendants, at the commencement of the suit, providing how the funds to be recovered from this same trustee should be applied when recovered. To give the fullest effect to this agreement, it is an executory contract, which does no operate till the funds are recovered from the trustee. It presupposes that the funds are first to be obtained. But it is contended that this is necessary to avoid circuity of action. This question was somewhat considered in the former opinion in this case, on the hearing between the principal parties. To give effect to this principle, it must appear that the money when recovered is to be paid directly back to the same party. That is not the case here. The money when recovered of the trustee, is not to be repaid to the trustee. But it is said that the trustee has paid it to those to whom the plaintiffs by their agreement would be bound to pay it when recovered. But if he has done so, it is merely a payment in his own wrong. No one has a right to pay the debt of another without an authority in fact or in law, and then set up that payment in defence to a legal claim. The plaintiffs may have claims and set-offs against those to whom, by appointment, the money would, upon the trustee's hypothesis, be coming when collected, which gives the plaintiffs an interest to recover the money. If, as they contend, their obligation is an alternative one, to pay the defendants themselves or their creditors, they may have still larger claims of set-off

Webster
v.
Randall
and Tr.

The plaintiffs could in no sense be deemed naked trustees for those creditors ; but if they could, they have a right, for the reason already stated, to have the possession of the funds.

The fact, that Joshua Mellen has become the purchaser of the debts of the several creditors, can make no difference ; he can have no greater rights than those of whom he purchased, and his interest, whatever it is, has accrued since the attach ment.

The circumstance that the plaintiffs commenced a subsequent suit for the same cause of action and arrested the defendants, cannot effect this, a prior attachment.   It might be very true, that that suit might have been abated by the pendency of the former ; but the latter could not have the effect of abating the former.

*Trustee charged on his answer.*